The first case, uh, Gramercy Wrecking. Good morning, your honors. Uh, my name is Daniel Barnes. I represent the appellant. I'm from the law firm of Chiesa, Shehanian, and John Tomasi. The issue in this case is whether by signing the job site agreement, appellant Gramercy agreed to be bound by the respondent union's collective bargaining agreement, or CBA, including the mandatory arbitration provision in the CBA, doesn't, doesn't that, as you've just say, the JSA clearly indicate that you agree to, and I quote, abide by all terms and conditions of employment. Uh, fourth in the CBA, your honor, it does say that, but I think you're taking it a little bit out of context. I think what the agreement, what the JSA does is it lists a subset of CBA provisions for which the JSA applies. Um, at the very least there's a subset that says to make contributions to the welfare and pension funds for various fringe benefit plans, that subset too. Uh, that's your honor. What the, what the, what the JSA does is it picks certain clauses, certain terms and conditions of the CBA and incorporates those into the JSA. These are sophisticated parties, your honor, particularly the union and the welfare fund, if they had wanted full incorporation, they could have just simply said the J, the, the, the collective bargaining agreement and all its terms and conditions are hereby incorporated by reference. It's a very simple sentence. That's all they had to do. They didn't do that. Have you, I mean, it seems to me that went about this the wrong way. It seems to me you got a demand for a withdrawal liability from the fund, right? That's correct. And then you came running into federal court to get a declaratory judgment, uh, against the fund and the union, right? Correct. To say that we weren't, we did not have withdrawal liability, but ordinarily under the MPPAA, uh, there would be an arbitration for an employer who's challenging withdrawal liability. Right. But our, our, our position was that the MPPAA did not apply because the CBA did not apply. So you think that parties can contract out of being an employer under the MPPAA? We'll just, well, although we're an employer, although we're making contributions to the fund, we'll have an agreement among ourselves that that doesn't count. You think you can do that? Uh, I think we can, Your Honor. And we did. And these JSAs are not uncommon in this industry. Well, but you made contributions to the fund, right? Correct. Uh, and so you were an employer at a time, right? Uh, Your Honor, but the JSA explicitly says in its final sentence, the amount of the required payment shall be measured by the hours of work performed by the owner, operator, and subcontractor's employee. And then finally, this, this agreement is effective as of the date above set forth and shall remain in full force, full force effective and so such until such time as the job described above, which is that, which this agreement covers is completed, but we're done. But you are an employer. You're just saying that it ended in 2012 or 2011, right? Uh, effectively. Yes, Your Honor. Okay. But then that seems to me, your argument is really that we're not liable, uh, under, uh, because we're no longer in the business, right? Isn't that really your argument? And that's a defense at an arbitration. It's not saying you're not an employer. Your Honor, I think you're putting the cart before the horse. You have to get to the arbitration first. And that's the sole issue that was decided before the district court. Oh, the MPPAA provides for arbitration, right? It does. It doesn't matter whether you contracted it or whether it's in the CBA. The MPPAA requires arbitration for an employer who's challenging withdrawal liability, right? Yes. So why isn't that where you ought to be first? And then if it turns out that you have withdrawal liability, then you can try to go against the union to cover the costs that you're stuck with. Your Honor. But again, it goes back to what I said a moment ago, which is we're putting the cart before the horse, which is there has to, in order to be subject to the MPP, the MPAA, we had to be part of the CBA. You had to be an employer, right? Uh, we've, we have to have both, Your Honor. Are you saying just so I'm clear, are you now, are you, are you conceding that you are an employer for, for ERISA purposes? We're not, Your Honor. Because the GSA doesn't make us one. So, so if, if we were to, um, uh, agree with you that the, uh, district court improperly, uh, dismissed your claims against the fund, given that the fund and the union are, are separate, uh, entities and the fund is not a party to the agreement, then why shouldn't we just, uh, remand to the, to the district court, uh, to, uh, consider in the first instance, whether you are an employer with respect to ERISA? That's exactly what you should do, Your Honor. That, that's one of the options this court has. And that's, that, that, that's an option we would advocate for because ultimately, Your Honor, this was a motion to dismiss, we never considered any of the factual issues that happened. There was a, on page nine of our brief, there's a reference to a, sort of an affirmation or an affidavit put in by the, by the president of Gramercy with regard to his communications with the leadership of the union about what the, what the, what the JSA was going to mean. And the court didn't consider that. It went solely to the issue of whether or not we incorporated by reference, the entirety of the CBA. And again, if you look on page 827 of the record, that's not what it says. It lists a subset of CBA provisions that are going to apply to this, to this JSA. I'm still confused. Are you disputing that your client was an employer obligated under the MPAA to make payments to the plaintiff, plaintiff pension fund at some point during the life of the period covered by the JSA? You disputing that? Yes, Your Honor. You're disputing that you were obligated to make payments to the pension fund. No, we're not disputing that we were obligated to make payments to the pension fund because that's in the JSA. Right. But statutorily, I don't, we never got to the issue of whether or not the MPAA applied because the district court immediately found that the arbitration was required. We never got to any of those issues. You don't have to find that you're an employer anyway. We just had, have to conclude that you were under an obligation to make these contributions under our prior decisions, right? I'm not sure that's right, Your Honor, because the JSA is what controls here and the JSA does not say arbitration. But what about the Cordiello case? I'm sorry. In the Cordiello, we said in the absence of a statutory definition of employer, we have construed the term as a person who is obligated to contribute to a plan. Weren't you obligated to contribute to a plan by the JSA even? Yes, but the JSA also says it ends. And so it's the last sentence of the JSA. Once it ends, that's our, that's the end of our obligation. It, the JSA, you have to understand here, Your Honor, there, this was a very small part of a much larger job. Our clients were called in to do, there was a, we all know that, are familiar with the giant stadium construction project. This was the demolition of that. Our clients had a very small role in that. They needed specialized services. Union labor was required. Our client came in, did a very small part of a much larger job. It never would have agreed to the CBA and all of this, all of this subsequent liability, had it known that it was being forced to incorporate by reference, the CBA in the JSA, it never agreed to that. That's what they agreed to make you, but they agreed to make contributions to the fund, right? They did during the, during the time they were paying the employees, but not after that. That's what the JSA says. So are there lots of people making contributions to the fund that are not employers? Um, Your Honor, the record is silent on that. That's, that, that's, that's not, that's not what we're, we're here to talk about. Can I make contributions to the fund? I'm sorry? Can I make contributions to the fund? I would have assumed not. Uh, I assume that the fund would probably take your money, but no. Thank you. Thank you, Your Honor. Good morning, Your Honors. Benjamin Carfunkle, law office of New and Carfunkle on behalf of trucking employees of North Jersey Welfare Fund, comma Inc. Um, can I ask you to, uh, focus on the, uh, Gramercy's claims against the fund, um, understand the, the arguments with respect to the, uh, claims, Gramercy's claims against the union, but with respect to the fund, um, the, uh, and correct me if I'm misunderstanding, um, uh, the district court never addressed whether Gramercy, uh, is an employer or not because it dismissed the petition on the grounds that Gramercy was required to arbitrate the question of, of withdrawal liability, uh, on the grounds that Gramercy was, uh, uh, uh, pursuant to the terms of the agreement with the union. So why shouldn't we, uh, just remand for the district court to consider the question in the first place? Uh, Your Honors, that, that would be a viable option because the district court did not address that issue. And I think that is the issue that there's a cart before the horse to find out whether or not, uh, Gramercy was an employer, but even . . . I mean, is there a dispute about it? I do not believe there's a dispute, but if that's the issue that the district court wants to, to address to confirm that, that would be, uh, that would, uh, resolve all the issues I believe with respect to, uh, whether or not they have to go forward with arbitration because I believe once the district court, uh, confirms that they are an employer because it did make contributions to the uh, to submit to arbitration under the rules of, of MAPA. Um, as Korea Shipping in my brief mentioned that, uh, once you have an obligation to contribute, um, to the fund, whether or not you believe the JSA is a CBA or any other document, they were making contributions pursuant to the collective bargaining agreement with the union. Um, the JSA is silent as to their, their rate of contributions. Uh, they admitted in their petition that they contributed a set amount, uh, that what the rate is on an hourly basis. Uh, they make, they made payments for a few years. Um, even though the JSA says it's, uh, only raising the force in effect until such time as it's described above, that is correct. They only have to make contributions while they're working on this job. Withdrawal liability is a different entity than contributions to the fund. They only may have to make contributions to the fund during that time period, but once they withdraw from the fund as an employer, they're obligated to, um, make withdrawal liability payments if that's so assessed. Why did it take five years to send them the bill? Um, as, as the council mentioned, there's a demolition job with, with regards to the union, they don't know when an employer ceases. There's no letter that goes out to the union saying, well, now we have ceased our employment, um, now we have ceased our job. So the union, sometimes it takes a while for them to realize no contributions are coming in and therefore, um, they then, uh, discuss with their actuaries whether or not to assess a withdrawal liability. But sometimes it does take some time from the last contribution to the, to the union and to the fund to realize that it actually is a cessation of employment and therefore, uh, triggering a withdrawal liability. What's the withdrawal liability calculated on? Um, with the actual number of the withdrawal liability? $522,000. How's that calculated? That's based on, um, actuarial rates. It's also based on the contributions they've made into the fund, the rate, um, how many hours they've contributed. But it's also assessed as to what the deficiency, the fund is currently, currently incurred at the time of withdrawal. So even though we're now... It's not based on their, their participation in that fund, though. It would be based on their participation in the fund as well. Um, that would be a portion of the actuarial, um, calculation. So the answer is not entirely. I mean, it seems odd that they paid $71,000 while they were working on the job and then five years later, they get this bill out of nowhere for $622,000. I mean, is that the way this usually works? Um, there is no typical way it usually works, but that would be an issue before the arbitrator to, if they wanted to challenge the withdrawal liability calculations, that would be something for the arbitrator to determine. You know what made up the $622,000? Um, it would be based on their highest contribution rate, um, the hours worked, and also the fund's, uh, deficiency at the time of their withdrawal. Those would be some of the key calculations. Deficiencies calculated, not only on their participation in the project, but others as well. Correct. On all employers that contributed to the fund. On the employer question, although it may seem commonsensical, uh, the answer, um, the district judge explicitly, and this is in the decision on 168 appendix, says contrary to both parties' contentions, the issue in this case is not whether petitioners should be deemed an employer under ERISA, exposing it to withdrawal liability for benefits contributions. Petitioner would have had made, had the parties JSA continued. At least that is not the issue yet. So it didn't, I mean, you, you, you concede that the district court didn't address that question, even though the answer may seem commonsensical. That's correct, Your Honor. And so what would be the inquiry? What's the factual dispute or what would be the facts, the relevant facts to determine whether the, uh, whether Gramercy is an, was an employer? I don't believe there are any facts in dispute. I believe Gramercy made contributions pursuant to the collective bargaining agreement to the fund, and that by definition makes them an employer under MAPA, and that would require them to go to arbitration. When you say pursuant to the collective bargaining agreement, the collective bargaining agreement determined what the rates would be and what the, you know, would devise the ultimate payment schedule? Uh, yes, Your Honor. Thank you. Thank you. All right. So that's not in dispute is what you're saying. I don't believe that's in dispute, Your Honor. Thank you, Your Honors. Good morning, Your Honors. Brady M. Connaughton, Cohen leader Montalbano and Connaughton on behalf of Teamsters Local 560. Uh, Local 560 submits that there is no contractual dispute between the union and Gramercy. It is unequivocal as Judge Kogan recognized that the JSA explicitly incorporated the CBA and all terms and conditions of employment of the CBA. The fact is, is that a contract, the JSA or the CBA, cannot circumvent ERISA and the MPAA. That wasn't the basis of the court's decision. That's what Chief Judge Kassman just pointed out. He said we don't need to deal with that because the CBA was incorporated. So what do you have to say about that? About which piece, Your Honor? Why are you relying on the MPPAA then in your argument? The MPAA actually doesn't apply to Local 560. That is an issue for the pension fund. My sole issue and the union's sole issue is whether or not there is a contract between the two parties. And there is, there's the JSA and the CBA. And the second piece of my argument, of the union's argument, is that Judge Kogan's opinion provides for contractual arbitration. As opposed to withdrawal liability arbitration, to which the union is not a proper party. So, I mean, if we send it back to Judge Kogan, or we find that there's no real factual dispute that Gramercy is an employer, it seems to me it's all premature for you, isn't it? In other words, there could be withdrawal liability found or not found. And if that's the case, then there's no need to drag you into this at all, right? That is the union's position, yes. That the union does, is not privy to anything that happens with the pension fund. That is a totally separate, as I set forth in my brief, that is a totally separate legal entity. The notices don't go out to the union. Well, their argument is though, that if they're on the hook for all this withdrawal liability, it was based on misrepresentations made by your union. And so they're planning to come after you for indemnification or some other equitable remedy, right? And that very well may be their argument, but as Mr. Barnes acknowledged, these were sophisticated parties. If there was some kind of an agreement, well, first of all, if the union, if the president of the union had somehow been given the authority by the pension fund and by the board of trustees of the pension fund, you would have to first have that authority in order to even enter into that kind of agreement. Second, if there was that kind of agreement, it would have had to be reduced to writing because these are sophisticated parties. And second, there would have to be a question of whether or not the parties could even agree to circumvent the law and the statute. So those would have to be questions that would need to be answered before the union is even brought into this case after the withdrawal liability proceedings are completed. The GSA doesn't reference the CBA's terms regarding arbitration, correct? It does not specifically say the word arbitration or arbitration clause, no. But it does say that, that the company agrees to abide by all terms and conditions of employment for its employees. So it puts you into the situation. If there was a disciplinary matter, would the individual, the grievant, be entitled to grieve that pursuant to the arbitration procedure? I would submit and the union would submit that the union could bring that person to the arbitration procedure on behalf of that employee. Do you think there's any dispute as to whether or not Gramercy was an employer? Under the contract or under ERISA? Under ERISA. I don't think it's the union's position to weigh in on that because the union isn't involved in that kind of a determination. That is something between the pension fund and the employer, or Gramercy to prevent duplicative use of the word employer. The pension fund isn't part of this litigation. I'm sorry? The pension fund is not part of this litigation. The pension fund? Directly. The pension fund is part of the litigation, Your Honor. No, I'm not. I mean, the fund itself on the ERISA determination is not weighed in on it. The pension fund is a part of the litigation. The pension fund is the one who issues the notice and demand for withdrawal liability. The union has no part in any of that. That is all the pension funds actuaries and the pension funds board of trustees. They handle that entire piece. The union is completely separate from that. The fund is not a party to the GSA is what I mean. That is correct. The fund does not negotiate with employers for the provision of terms and condition of employment for employees. That's correct. Thank you. Thank you. Mr. Barnes, you'll have two minutes. There are a couple of different things that are driving this, but mostly it's the deficiency, the economic deficiency that the welfare fund has. I think the court or the panel rightly asked about the amount of the liability as compared to the actual amount of money our clients paid these particular employees. When you understand the minimal amount of money that was paid to these employees, you understand that our clients never would have agreed to the CBA given the small role at the job. New York law, as we said in our briefs, and as the court acknowledged, requires clear evidence when you incorporate an extrinsic document into your actual contract. That didn't happen here. If you read the GSA, it's selecting certain provisions. At the very least, the district court could have found that it was ambiguous and considered the affirmation of Mr. Parcial, who testified about his conversations with the union about what was being done here. So what is the inquiry to determine whether or not Gramercy was an employer? Among other things, whether or not it was making contributions pursuant to the GSA or whether or not it was making contributions pursuant to the CBA that it was a purely contractual matter under the GSA. What they could have done is taken the actual written language of the CBA and actually spelled it out in the GSA. They could have said, these are the rates of payments. This is the amount of how we're going to make you calculate what other liabilities you have. And they could have done that. If they had done that, that would make them not an employer under the MPAA? Your Honor, that's an inquiry for the district court. Well, I know, but I'm trying to figure out what is the district, what are you asking the district court to do? And is there a dispute about the facts? Whether or not this was purely a matter of contract under the GSA or whether or not it was, whether or not the CBA was incorporated entirely. Okay. But what's your basis for saying that parties can contract around employer's status for purposes of contributions to a pension fund? Your Honor, this goes to the larger issue of what was going on here. This was a very small part of a much larger project. Our clients would never have agreed to this liability. And certainly the affirmations that were ignored by the district court bear that out. This is a situation where a very large risk that was borne out of future liability was imposed upon this employer based upon representations that turned out not to be true. But I mean, look, it seems to me your defense is really one for an arbitration on withdrawal liability. You're saying, I think your brief indicated that your client is no longer in the business in that jurisdiction, right? That's correct. So that's the reason why you wouldn't be subject to all this withdrawal liability, right? But our position is that we were never in the business in that jurisdiction because the GSA said we weren't. So you just made contributions to the fund without being an employer? Yes. Thank you. Thank you both. Thank you all three for your arguments. We appreciate them. The court will reserve decision.